UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

NANCY CREDIDIO,

                    Defendant.

19 Cr. 111 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

On February 7, 2020, the Court sentenced defendant Nancy Credidio to 33 months' incarceration, to be followed by three years of supervised release, following her plea of guilty to a fraud offense. Ms. Credidio was remanded into custody and incarcerated at the Metropolitan Correctional Center ("MCC"), where she remains today. At least four inmates at the MCC have been diagnosed with COVID-19, and the Bureau of Prisons ("BOP") has indefinitely suspended inmate movement, making it unlikely that Ms. Credidio will be transported to a designated facility any time soon. Defense counsel represents that Ms. Credidio, who is 72-years old, is on the list of inmates at the MCC whom BOP considers to be at "high risk" of serious complications from COVID-19.

In light of these circumstances, on March 30, 2020, defense counsel filed an emergency motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to modify Ms. Credidio's sentence and immediately release her to home confinement and a period of supervised release. Dkt. 61. The same day, the Court issued an order, explaining that it would not grant Ms. Credidio's motion "because a lengthy term of imprisonment is required for Ms. Credidio for all the reasons reviewed at sentencing," but stating that the Court "would be amenable—if it has

legal authority to do so—to order that she be temporarily released from custody in the MCC in favor of home incarceration, pending her designation to a longer-term federal prison or the abatement of the present public health emergency, whichever occurs first." Dkt. 62.

On March 31, 2020, defense counsel submitted a memorandum of law, requesting that the Court "treat Ms. Credidio's motion as invoking the writ of habeas corpus codified at 28 U.S.C. § 2241." Dkt. 64 ("Def. Mem.") at 2. Defense counsel argues that confinement in the MCC represents an "ongoing . . . unconstitutional threat to Ms. Credidio's health and life." Dkt. 64 at 7. Specifically, according to defense counsel, Ms. Credidio's continued incarceration violates the Eighth Amendment's "deliberate indifference" standard. Def. Mem. at 3 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). On April 1, 2020, the Government responded, opposing the motion. Dkt. 65. ("Govt. Mem."). The Government explained that there is no legal authority that would permit the Court to pause Ms. Credidio's sentence, order her temporary release to home incarceration, and then have her re-committed to the BOP, but that administrative remedies may be available to Ms. Credidio. Govt. Mem. at 1.

The Court is constrained to deny Ms. Credidio's request. Neither the writ of habeas corpus, nor any other legal authority of which the Court is aware, can provide the relief Ms. Credidio seeks.

Federal courts may hear habeas corpus petitions, pursuant to 28 U.S.C. § 2241(c)(3), from federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." A motion under § 2241 "generally challenges the execution of a federal prisoner's sentence, including such matters as . . . prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (citing *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir. 1997)).

Procedurally, "the Second Circuit has held in no uncertain terms that an inmate must exhaust his administrative remedies prior to seeking relief under Section 2241," even though administrative exhaustion is not required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *Atkinson v. Linaweaver*, No. 13 Civ. 2790 (JMF), 2013 WL 5477576, at *1 (S.D.N.Y. Oct. 2, 2013); *see also Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001) ("[F]ederal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief."). This requirement "protect[s] the authority of administrative agencies, limit[s] interference in agency affairs, develop[s] the factual record to make judicial review more efficient, and resolv[es] issues to render judicial review unnecessary." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). The failure to exhaust constitutes a procedural default that bars judicial review unless the petitioner makes a showing of cause and prejudice. *Atkinson*, 2013 WL 5477576, at *1 (citing *Carmona*, 243 F.3d at 634). Such a failure may be excused for cause "when such exhaustion would be futile or where the agency has predetermined the issue before it." *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009) (internal quotation marks omitted).

As to the merits of the § 2241 claim made here, "[i]n its prohibition of 'cruel and unusual punishments,' the Eighth Amendment [both] places restraints on prison officials, who may not, for example, use excessive physical force against prisoners," and requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). An Eighth Amendment violation must involve both "a prison official's act or omission [that] result[s] in the denial of the minimal civilized measure of life's necessities," *id.* at 834, and a showing that the offending conduct was "wanton," *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104. However, neither "an inadvertent failure to provide adequate medical care" nor a complaint of "negligen[ce]" rises to the level of an Eighth Amendment violation. *Id.* at 105–06; *see also Farmer*, 511 U.S. at 835 (violation requires "more than mere negligence"). The inquiry into wantonness focuses primarily on the "prison official's state of mind," *id.* at 838, not the effect of the conduct on the inmate, *see Wilson*, 501 U.S. at 303.

Ms. Credidio's § 2241 motion fails on both procedural and substantive grounds. Defense counsel's memorandum does not mention the administrative exhaustion requirement, let alone chronicle any steps Ms. Credidio has taken to obtain potential administrative remedies, several of which, as reviewed below, may be available. Nor does the defense's memorandum suggest that this requirement could be excused for cause here.

Even if Ms. Credidio had exhausted her administrative remedies, her § 2241 motion would fail on the merits. The Court is deeply concerned about the health and safety of Ms. Credidio at this time and, as reviewed further below, urges BOP to do everything in its power to limit the risk posed to her by COVID-19, in particular by designating her forthwith to a BOP facility at which the risks presented to her at the MCC would likely be mitigated. However, the Court cannot find that the BOP has been deliberately indifferent to Ms. Credidio's needs, in light of the numerous and significant plans and protocols recently implemented by the BOP to protect

prisoners, *see* Govt. Mem. at 4–5.[1]  The Court is thus "powerless" to order Ms. Credidio "temporarily released from custody until circumstances improve," even though such temporary release would be "the rational and right result." *United States v. Nkanga*, 18 Cr. 713 (JMF), Dkt. 87 at 9 (S.D.N.Y. Mar. 31, 2020).

As the Government notes, Ms. Credidio has several potential administrative remedies she can pursue with the BOP.  Most salient, the BOP may expedite Ms. Credidio's designation and transfer to the BOP facility at which she will serve the bulk of her sentence.  In strong terms, the Court expects that BOP will do so urgently, and Ms. Credidio, through counsel, should pursue such action.  Separately, BOP has authority to grant temporary release of prisoners under defined circumstances, pursuant to 18 U.S.C. § 3622.  Finally, the BOP has the power under 18 U.S.C. § 3624(c), in appropriate cases, functionally to reduce a sentence to a degree.  The Court expects that Ms. Credidio will urgently pursue relief from the BOP, and the Court strongly urges the BOP to make it a priority to take effective action to guard Ms. Credidio against exposure to COVID-19.  The Court sentenced Ms. Credidio to 33 months of incarceration due to her deeply destructive series of fraud offense conduct and her long history of chicanery.  But the Court had no way to forecast at the time that her incarceration might expose her to a heightened risk of contracting COVID-19.  Had the Court legal authority to do so today, the Court would defer the

---

[1] Notably, although courts, including this Court, have released individuals from several forms of custody in recent weeks due to the threat posed by COVID-19—*see, e.g.*, *United States v. McKenzie*, No. 18 Cr. 834 (PAE), Dkt. 443 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant with respiratory condition); *Coronel v. Decker*, 20 Civ. 2472 (AJN), Dkt. 26 (S.D.N.Y. Mar 27, 2020) (ordering release of petitioners with serious underlying conditions from immigration detention); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application of 65-year-old defendant with COPD, pursuant to 18 U.S.C. § 3142(i)—the parties have not cited, and the Court could not find, a single example of a Court granting a sentenced defendant's habeas motion on the grounds cited here.

start of Ms. Credidio's prison term pending the abatement of the current public health crisis. While the Court lacks such authority, the Court expects that the BOP—which does have the latitude to mitigate health risk including by promptly designating Ms. Credidio to a facility and enabling her to leave the MCC—to act with acute sensitivity to Ms. Credidio's interests in health and safety.

To assure that the BOP treats this matter with the urgency it deserves, the Court directs Government counsel to serve this order directly on the warden and chief counsel of the MCC.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: April 2, 2020
New York, New York